Fred GRAVES, Petitioner—Appellant,

v.

Mike KNOWLES, Warden;  et al.,
Respondents—Appellees.

No. 06–15477.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 16, 2007.

Filed May 9, 2007.

Fred Graves, Blythe, CA, pro se.

Monica Knox, Esq., Federal Public Defender's Office, Sacramento, CA, for Petitioner–Appellant.

Lisa A. Tillman, Esq., Office of the California Attorney General, Sacramento, CA, for Respondents–Appellees.

Before: FERGUSON, REINHARDT, and M. SMITH, Circuit Judges.

## MEMORANDUM *

Fred Graves, a California state prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition, in which he claimed his due process rights were violated when he was found guilty of distribution of a controlled substance in prison disciplinary proceedings. As the parties are familiar with the facts of this case, we do not separately recount them here. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.

### I.

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556, 94 S.Ct. 2963. The Court stressed that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* at 566, 94 S.Ct. 2963. While an inmate has the right to present evidence in his defense, the Court found that an inmate does not have the right to confidential, irrelevant, or unnecessary information. *Id.*

### A.

■ Graves contends that his right to due process was violated by the senior hearing officer's (SHO) denial of his request to call Officers McCoy, Meadows, and Shambre, and his cellmate Collins as witnesses. This argument fails. The SHO did not violate Graves' due process rights process because Graves' proposed witnesses could not provide any relevant information. Neither McCoy, Meadows, nor Shambre was present during the cell search and none had any information pertaining to Graves' knowledge of the heroin stashed in his fan. Collins' testimony would also have been irrelevant because Graves admitted that the fan was his, and he did not explain what additional evidence Collins could have offered or how Collins' testimony could have supported his defense theory. Moreover, in light of all of the other evidence against him, any error that may have resulted from Graves' inability to call Collins as a witness was harmless. *See Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (error deemed harmless on habeas review unless it had a "substantial and injurious" effect on the verdict).

### B.

■ The SHO's failure to articulate his reasons for refusing Graves' request to ask Lt. Valencia additional questions was also harmless error. *Id.* The questions Graves wanted to ask Lt. Valencia would not have provided any evidentiary support for his defense theory that the heroin did not belong to him. The additional questions were irrelevant and Graves' inability to ask these questions was therefore harmless. *Id.*

### C.

■ Graves' due process rights were not violated by the SHO's denial of his request for records of cells searched before and after his cell search and the transcript of Officer Weston's testimony at Collins' disciplinary hearing. The SHO properly found that these documents were irrelevant and unnecessary to Graves' defense. *Wolff,* 418 U.S. at 566, 94 S.Ct. 2963. Graves contends that he also asked to inspect the packaging material that encased the heroin. This request does not appear anywhere in the record, and even assuming that the request was made and denied, that denial did not violate Graves' due process rights because the heroin's packaging material was not exculpatory. If the heroin's packaging material was old, it would not necessarily mean that Graves was not aware of the heroin in the fan. Thus, Graves' inability to inspect the heroin's packaging material was likely irrelevant, and certainly harmless.

### D.

■ Due process requires a non-biased decision maker at a prison disciplinary hearing. *Wolff,* 418 U.S. at 570–71, 94 S.Ct. 2963. Without more, however, the mere fact that the SHO also presided over Collins' disciplinary hearing and found Collins not guilty is insufficient evidence that he was biased against Graves. *See Bostic v. Carlson,* 884 F.2d 1267, 1271 (9th Cir. 1989) (finding petitioner "failed to plead any specific facts supporting his allegations that the hearing officer was biased").

### E.

█ Graves' due process rights were not violated by his investigative employee's failure to interview Officers McCoy, Meadows, and Shambre and his cellmate Collins before his disciplinary hearing. The investigative report prepared by his investigative employee, Officer Feryance, states that Graves only requested that he interview Officer Meadows before the hearing. And further, even if Graves did ask Feryance to interview Officers McCoy, Meadows, and Shambre and cellmate Collins, his failure to do so was harmless. *See Brecht,* 507 U.S. at 637, 113 S.Ct. 1710. Graves did not indicate what information they would have provided in support of his defense, and we are aware of none. Moreover, neither the officers nor Collins could offer relevant information about the search because they were not present while it took place.

**AFFIRMED.**

FERGUSON, Circuit Judge, dissenting:

I respectfully dissent from the majority's denial of Graves's habeas petition. In his disciplinary hearing, Graves was denied the right to put forth his defense, which is plausible and, if proven true, would exculpate him. The hearing officer ("Lt. Adams") denied Graves witnesses and documentary evidence that could have supported his theory that he was framed. Graves's defense is all the more credible given the assertion that one officer may have lied regarding whether the search was random or based on an informant's tip. I also would grant habeas relief on the ground that the prison's practice of using the same adjudicator in two hearings arising out of the same incident violates due process.

### Denial of Witnesses

Lt. Adams refused to permit Graves to question several witnesses, including Officers McCoy, Meadows, and Shambre, as well as Graves's cellmate Collins. He also cut short Graves's questioning of Lt. Valencia. The majority states that such testimony and evidence would have been irrelevant and that any error was harmless.

The evidence would have been relevant, however, to Graves's claim that he was set up by another inmate who put the heroin in the fan and then tipped off the guards. The witnesses' testimony would have determined whether the search was random or based on an informant's tip. Although Meadows and Shambre did not search Graves's cell, they did escort him away from his cell to a custody cell. If, as Graves maintains, inmates are lead to custody cells only during targeted searches, then the practices employed here disproves Officer Weston's testimony that the search was random.

Officer Weston's testimony on whether the search was random made it especially important that Graves be allowed to call other witnesses. Officer Weston stated that the search may have been prompted by a "rumor" and that he "searched [the cell] on a hunch," but that "it was still picked randomly." This prompted Lt. Adams to ask for clarification: "Officer Weston, I'm having a problem reconciling whether or not this was a random search or whether confidential information was used in choosing this cell for a search." Officer Weston then reiterated that the search was random. Given the ambiguity of Officer Weston's testimony and Lt. Adams's statement about the issue, Graves should have been allowed to call witnesses to support his defense that the search was in fact targeted and based on an informant's tip.

### Impartial Adjudicator

I would also hold that Graves's due process rights were violated by the same adjudicator deciding both his case and that of his cellmate Collins. The process afforded here was contrary to the basic foundations of due process and fair adjudication.

On June 5, 2002, Lt. Adams presided over Collins's disciplinary hearing regarding the same incident at issue in Graves's case. Graves testified as a witness at the hearing, stating that the fan belonged to him. After the hearing, Lt. Adams dismissed the charges against Collins. Several weeks later, on July 21, 2002, Lt. Adams began proceedings in Graves's case regarding the very same facts. Lt. Adams ultimately found Graves guilty of the heroin charge for which he had acquitted Collins.

The same adjudicator should not preside over two cases arising from the same set of facts in two separate hearings, taking evidence from two sets of witnesses while barring the accused access to much of this evidence. Lt. Adams heard evidence and testimony in Collins's hearing to which Graves was not privy.

Officer Weston testified at Collins's hearing, yet Graves was denied access to the transcript of this testimony. Officer Weston then testified in Graves's hearing. Graves was therefore deprived of the opportunity to test the consistency of Officer Weston's testimony. Graves also was denied the opportunity to call Collins as a witness in his hearing. This means that the adjudicator, Lt. Adams, had before him evidence about the incident (testimony from both Collins and Officer Weston) that was kept from the accused, Graves. This violates the very foundations of due process, which require that we provide the accused the right to know all the evidence against him or her. As the Supreme Court has recognized:

Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots.

*Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

Of course, there are cases in which undisclosed evidence may be necessary in prison disciplinary proceedings, such as to protect the identity of an informant or to protect a witness from retribution. But institutional security was not the basis given by the prison for using the same adjudicator for both Collins's and Graves's cases; certainly one could have different hearing officers for Collins and Graves without threatening the safety of other inmates. Neither was security the reason Lt. Adams gave for denying Graves his right to call Collins as a witness or denying him access to the transcript of Officer Weston's testimony at Collins's hearing.

Accordingly, Lt. Adams, having presided over Collins's hearing, should not have presided over Graves's hearing. The fact that Lt. Adams heard evidence that was withheld from Graves (the testimony of Collins and Officer Weston) makes the due process violation clear.

For the foregoing reasons, I respectfully dissent.